United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 27, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 00-60299

---

DAVID CHARLES NUWER

Plaintiff-Appellant,

VERSUS

MARINER POST-ACUTE NETWORK, FORMERLY LIVING CENTERS OF AMERICA,
PARENT COMPANY OF REHABILITY HEALTH SERVICES, INC., AMERICAN
THERAPY SERVICES, and AMERICAN REHABILITY SERVICES, INC.,

Defendants-Appellees.

---

Appeals from the United States District Court
for the Southern District of Mississippi

---

Before SMITH and BARKSDALE, Circuit Judges, and DUPLANTIER, District Judge.

DUPLANTIER, District Judge:

David Charles Nuwer filed suit against his former employer and related corporations, seeking

damages for breach of his employment contract, wrongful termination, violation of his due process

rights relative to termination of his employment, and intentional infliction of emotional

---

%

District Judge of the Eastern District of Louisiana, sitting by designation.
distress. The district court granted the defendants' motion for summary judgment on all claims.

Nuwer appeals; we affirm.

## FACTUAL BACKGROUND

David Nuwer began working as a physical therapist for Gulf Coast Physical Therapy in 1979. Corporate mergers and acquisitions[1] resulted in Nuwer being employed since 1995 by a subsidiary of Mariner Post-Acute Network, Inc. (Mariner). We refer to the defendants collectively as Mariner, the parent company, and although Mariner never directly employed Nuwer, for convenience we refer to Mariner as his employer.

Nuwer worked as a physical therapist and an off-site manager. Mariner, in an attempt to comply with Medicare guidelines, implemented a policy requiring physical therapists to write "weekly summaries" in clients' charts instead of "daily notes." In August 1996 Nuwer attended a seminar sponsored by Mariner addressing, among other topics, proper documentation in medical records. In November Whitney Armond, Nuwer's supervisor warned him that the Quality Audit Department had found "serious neglect" of Nuwer's compliance with company standards regarding his documentation of clients' charts. In early December, Nuwer and two fellow employees attended a workshop conducted by Mariner, where they were instructed how to implement the new policy discussed at the workshop. Thereafter Armond directed Nuwer to correct the treatment records for his therapy clients for the period of September through November 1996, to bring those records into compliance with company standards, including the new charting policy. He was also told to amend the records to include notes concerning degrees of progress related to specified goals. Nuwer proved

---

[1] The specifics of the various corporate mergers and acquisitions are of no consequence to Nuwer's claim.

2

unable, or unwilling, to comply with the company standards, including the new policy. As a result, after at least two warnings, Mariner terminated his employment. The "Termination Notice" stated that "[d]ocumentation does not meet company standards. Documentation training for employee has been conducted twice. Once in August and again in November."

STANDARD OF REVIEW

We review a district court's grant of summary judgment *de novo*. *Hodges v. Delta Airlines, Inc.,* 44 F.3d 334, 335 (5th Cir. 1995) (en banc). Summary judgment is properly granted only when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(c). We view the evidence and the inferences to be drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001). However, unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment. *Bridgemon v. Array Systems Corporation*, 325 F.3d 572, 577 (5th Cir. 2003), *Hugh Symons Group, plc v. Motorola, Inc.*, 292 F.3d 466, 468 (5th Cir. 2002).

BREACH OF CONTRACT and WRONGFUL TERMINATION

Nuwer alleges that Mariner terminated his employment "due to his failure to alter medical records," and that his termination "constituted a wrongful and willful breach of [his] express and implied contract of employment."

Under Mississippi law, which the parties acknowledge applies in this diversity case, an employment relationship may be terminated at will by either party "where there is no employment contract (or where there is a contract which does not specify the term of the worker's employment)." *Perry v. Sears, Roebuck & Co.*, 508 So.2d 1086, 1088 (Miss. 1987). To establish a contract of

3

employment, a party must establish the length of the contract and the amount of the salary for the term. *Short v. Columbus Rubber and Gasket Company, Inc.*, 535 So.2d 61, 64 (Miss. 1988). Nuwer contends that various corporate memoranda, considered together with his employer's 1994 "Policy and Procedure Manual," created an employment contract. The corporate memoranda include information concerning Nuwer's salary, an incentive compensation plan, and a benefits package. While those documents address various aspects of Nuwer's employment, they do not set forth a term of employment, nor can they be construed to do so. Neither can the 1994 Policy and Procedure Manual be so construed, despite its "requirement" that for each new employee an "employment offer letter" must be completed and that an employment agreement must be completed for each new employee who is a licensed professional. Indeed the 1994 manual contains two provisions stressing the "at-will" nature of the employment. Under these circumstances, unsubstantiated deposition testimony by Nuwer that he understood that his employment "continued year to year "[2] does not create a genuine issue of fact regarding the existence of a term of employment. Unsubstantiated assertions cannot defeat a motion for summary judgment. *Bridgmon v. Array Systems Corporation*, 325 F.3d at 577.

Nuwer failed to present any evidence which creates a genuine issue of fact relative to the existence of a term of employment. Because Nuwer failed to produce such evidence, there is no genuine issue concerning the existence of an employment contract. Therefore, Nuwer must be considered an at will employee.

Mississippi recognizes a narrow public policy exception to the doctrine of employment at will

---

[2] To support this testimony, appellant refers to an employment contract which by its terms expired in 1990, over six years before his termination.

4

for employees who refuse to participate in an illegal act or who are terminated for reporting illegal acts of the employer to the employer or anyone else. *McArn v. Allied Bruce-Terminix Company, Inc.*, 626 So.2d 603, 607 (Miss. 1993). Nuwer urges that the exception applies because it is illegal to change a medical record in the manner directed by Mariner, i.e., to add information to a final medical record without indicating the date the addition was made and by whom the addition was made. He asserts that Mariner never told him to initial and date the corrections he made or to use an addendum to make the changes.

In support of this contention Nuwer relies on the affidavit of Jacqueline Hodges, an expert in regulatory guidelines, including medical records documentation. She opined that "adding titles and subtitles such as 'weekly summaries,' 'goals,' and 'degrees of progress,' without any indication of the date and title of the person who made these late entries" is an illegal act as defined in 42 U.S.C. §1320a-7b(a). Ms. Hodges based her opinion on her belief that Nuwer was asked "to add late entry information to previously closed records without an indication that these entries were being made at a later date." There is no evidence that Nuwer was told not to date and initial the changes he made to the records or told not to create an addendum to the records to reflect the changes. Nor is there any evidence that such instructions were given during the December training session conducted by Mariner.[3]

It is significant that the materials provided to Nuwer for the December workshop stated in pertinent part that "addendums [sic] should be initialed and dated" and that "[w]hen sufficient space

---

[3] While there is testimony that during that seminar the participants were not instructed to date and initial late entries to medical records or to use addenda, that omission is not the equivalent of affirmatively instructing the participants not to date and initial the changes to the records or not to use addenda.

5

is not available on the original documentation to make corrections/additions, a notation will be made to 'see addendum.' The clinician will then utilize a lined form to add the required information." That information is consistent with that included in the employer' 1996 "Policy and Procedure Manual" which states "[a]ddendums [sic] may be added upon the need to clarify prior related documentation in compliance with legal and regulatory standards."

Because there is no evidence to support the factual basis for the opinion of Ms. Hodges, her opinion does not create a genuine issue relative to the legality of the changes to the therapy records requested by Mariner.

DUE PROCESS VIOLATION

In his complaint and brief appellant refers to a "due process" claim, asserting that his rights were violated when Mariner failed to follow the termination procedure outlined in the 1994 "Policy and Procedure Manual." However, the Mississippi decisions he relies upon are based solely on a contract theory.

Mississippi courts have recognized that even at will employees may have certain contractual employment rights based upon provisions included in the employer's employment manual. *Bobbit v. The Orchard, Ltd.*, 603 So.2d 356, 361 (Miss. 1992); *Perry v. Sears, Roebuck & Co.*, 508 So.2d at 1088. Where an employer distributes to its employees a manual setting forth policies and procedures regarding the reprimanding, suspending, or discharging of an employee, the employer is bound to follow the provisions of the manual, even for an at will employee, where there is nothing in the employment contract to the contrary. *Bobbit v. The Orchard, Ltd.,* 603 So.2d at 356. Because in *Bobbit* there was no contrary provision, the employee had a claim. By contrast, in *Perry* the Mississippi Supreme Court rejected a similar employee claim because the policy handbook upon

6

which the claim was based contained a specific reservation of the employer's right to terminate the employment at any time.

The parties dispute whether the 1994 or 1996 "Policy and Procedural Manual" applies. No analysis of this issue is necessary. Suffice it to say that each of those manuals includes language explicitly preserving the "at-will" nature of the employment relationship. In describing "Types of Employment" the 1996 manual states "[e]mployment is considered 'at will' and is terminable at the discretion of the employee or employer at any time during the course of employment." The 1994 manual, in addressing "Professional Conduct Rules" and "Absenteeism and Tardiness," states "[s]ince all employees are employed 'at will', with permission of Corporate Office, any employee may be terminated by supervisor at any time for any reason." The quoted language clearly indicates that Mariner maintained the right to terminate an employee "at will," despite the promulgation of procedures applicable to termination of employment.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

"A claim for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes." *Lee v. Golden Triangle Planning & Development District, Inc.*, 797 So.2d 845, 851 (Miss. 2001). In order to recover damages for intentional infliction of emotional distress, a party must prove that the defendant's conduct was "extreme and outrageous." *Burroughs v. FFP Operating Partners, L.P.*, 28 F.3d 543, 546 (5th Cir. 1994). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *White v. Walker*, 950 F.2d 972, 978 (5th Cir. 1991) (discussing with approval the citation of comment d to §46 of the Restatement (First) of Torts in *Lyons v. Zale Jewelry Co.*, 150 So2d 154, 158 (Miss.

7

1963)).

Nuwer grounds his claim for intentional infliction of emotional distress primarily upon his contention that Mariner instructed him to alter certain medical records illegally. As noted above, there is no summary judgment evidence to support this contention. Nuwer also asserts other complaints, e.g., a failure to properly train him, and instructions not to seek outside assistance. Clearly, none of Mariner's acts or failures to act about which Nuwer complains "go beyond all possible bounds of decency" or can be described as "extreme and outrageous."

CONCLUSION

The district court did not err in entering judgment dismissing with prejudice all of Nuwer's claims.